# SUBSCRIPTION AGREEMENT
# FOR
# FELLOWS ENERGY LTD.

Fellows Energy Ltd., a Nevada corporation (the "Company"), and _____ ("Investor"), in consideration of the mutual promises contained in this Subscription Agreement (this "Agreement") and the performance and payment described in this Agreement, the sufficiency of which is hereby acknowledged, mutually agree as follows:

1.     <u>Subscription</u>. Investor hereby subscribes for and offers to purchase _____ units of the Company at $1.95 per unit (each a "Unit" and collectively "Units"), in exchange for the consideration set forth on the signature page below. Each Unit consists of three (3) shares of common stock, $0.001 par value per share, of the Company (the "Common Stock") and one and one-half (1 1/2) Series A warrants to purchase the Company's common stock (each a "Warrant," collectively the "Warrants" and together with the Units and the Common Stock, the "Securities"). One (1) whole Warrant will be exercisable into one (1) share of Common Stock at $1.00 per share for a period of three (3) years from the date of this Agreement.

2.     <u>Representations and Warranties</u>. Investor hereby represents and warrants as follows:

    (a)     Investor is experienced in evaluating and investing in oil and gas companies such as the Company. Investor has substantial knowledge regarding, and experience in, financial and business matters, including knowledge and experience in investing in and evaluating private placement transactions of securities in companies similar to the Company. Investor is capable of evaluating the risks and merits of its investment in the Company and has the capacity to protect his, her or its own interests. Investor has been furnished all information necessary to enable it to evaluate the merits and risks of an investment in the Company.

    (b)     Investor is acquiring the Securities for investment for his, her or its own account and not with a view to, or for resale in connection with, any distribution thereof, except in compliance with applicable securities laws, and Investor has no present intention of selling or distributing the Securities, and will not sell or distribute such Securities, except in compliance with applicable securities laws. Investor understands that as of the date of this Agreement the Securities have not been registered under the Securities Act of 1933, as amended (the "Act"). Investor understands that Investor has neither the right to require the Company or any underwriter to register the Securities under the Act or state securities laws at any time nor the right to join in any future registration of shares of capital stock by the Company except as provided for in the Confidential Private Placement Memorandum dated April 15, 2005 (the "PPM") provided to Investor by the Company in connection with this Agreement.

    (c)     Investor acknowledges that, because the Securities have not been registered under the Act, the Securities that Investor receives at the closing of its investment must

EXHIBIT C

be held indefinitely unless subsequently registered under the Act or an exemption from such registration is available. Investor is aware of the provisions of Rule 144 promulgated under the Act that permits limited resale of securities purchased in a private placement subject to the satisfaction of certain conditions, including, among other things, the resale occurring not less than one year after a party has purchased and paid for the security to be sold. Investor understands that at the present time Rule 144 is not applicable with respect to the Securities and may not be applicable in the future.

(d) Investor has read, understood, and is familiar with the PPM provided to Investor by the Company in connection with this Agreement and has had an opportunity to discuss in detail the Company's business, management and financial affairs with, and to ask questions of, the Company's managers and employees with regard to the Company, its businesses and other information relevant to Investor, and has reviewed all documents and records of the Company which the Company has provided in response to Investor's request and has had an opportunity to request and review all documents necessary to fully evaluate the investment decision.

(e) Investor is financially able to bear the economic risk of investment in the Securities, including a total loss of investment. Investor has adequate means of providing for its current needs and has no need for liquidity in its investment in the Securities and has no reason to anticipate any material change in its financial condition in the foreseeable future. Investor understands that the acquisition of the Securities is an investment involving a risk of loss and there is no guarantee that Investor will realize any gain from such investment, and that he, she or it could lose the total amount of such investment. Investor understands that neither the Securities and Exchange Commission nor any other U.S. federal or state agency has reviewed the proposed offering of Securities or made any finding or determination of fairness of the offering of Securities or any recommendation or endorsement of such investment.

(f) No representations or warranties have been made to Investor by the Company or any of its agents, managers, employees or affiliates, and in entering into the present transaction Investor is not relying on any information, other than from the results of independent investigation by Investor and the PPM. Investor understands that the Securities are being offered to him, her or it in reliance on specific exemptions from the registration requirements of U.S. federal and state securities laws and that the Company is relying upon the truth and accuracy of the representations, warranties, agreements, acknowledgements and understandings of Investor set forth herein in order to determine the applicability of such exemptions and the suitability of Investor to acquire the Securities.

(g) Investor has not been organized for the specific purpose of acquiring Securities.

(h) Investor has its principal residence in the state or jurisdiction set forth on the signature page to this Agreement, and the address and social security number or

federal tax identification number, if any, set forth below is the true and correct address and social security number or federal tax identification number of Investor. Investor has no present intention of becoming a resident of another state or jurisdiction.

(i) The information set forth in this Subscription Agreement is true, complete and correct, and Investor is aware that the Company and its counsel will rely on the information, representations and warranties set forth in this Agreement in accepting or rejecting Investor's offer to purchase the Securities. Investor has accurately and fully completed the Accredited Investor Certification attached as <u>Exhibit A</u> to this Agreement, which is incorporated in this Agreement by this reference. Investor represents that the information contained in <u>Exhibit A</u> to this Agreement is complete and accurate and may be relied upon by the Company and its officers, directors, and control persons. Investor hereby covenants to notify the Company immediately of any material change in any of the information contained in <u>Exhibit A</u> prior to the acceptance by the Company of his, her or its subscription.

(j) Investor acknowledges that no general solicitation or general advertising (including communications published in any newspaper, magazine or other broadcast) has been received by him, her or it and that no public solicitation or advertisement with respect to the offering of the Securities has been made to him, her or it.

(k) Investor understands that his, her or its subscription for the Securities is subject to acceptance by the Company, in whole or in part, and understands that his, her or its subscription offer may not be withdrawn.

(l) Investor has not made an overall commitment to investments that are not readily marketable that is disproportionate to his, her or its net worth, and his, her or its investment in the Securities will not cause such overall commitment to become excessive.

(m) Investor is an "accredited investor," as such term is defined under Rule 501 of Regulation D promulgated under the Act.

3. <u>Stock Certificate Restrictions</u>. All certificates representing Securities subject to this Agreement shall bear a legend in substantially the following form:

"THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR STATE SECURITIES LAWS AND CANNOT BE OFFERED, SOLD, ASSIGNED, OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT UPON DELIVERY TO THE COMPANY OF EVIDENCE SATISFACTORY TO THE

COMPANY AND ITS COUNSEL (INCLUDING, AT THE COMPANY'S OPTION, AN OPINION OF COUNSEL) THAT REGISTRATION IS NOT REQUIRED FOR SUCH OFFER OR TRANSFER AND THAT SUCH OFFER OR TRANSFER IS EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS AND REGULATIONS PROMULGATED THEREUNDER. THE SHARES REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED BY THE REGISTERED OWNER HEREOF FOR INVESTMENT AND NOT WITH A VIEW TO OR FOR SALE IN CONNECTION WITH ANY DISTRIBUTION THEREOF IN VIOLATION OF THE SECURITIES ACT. THE SHARES MAY NOT BE SOLD, PLEDGED, TRANSFERRED OR ASSIGNED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER THE PROVISIONS OF THE SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR IN A TRANSACTION OTHERWISE IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE SECURITIES LAWS."

4. <u>Indemnification</u>. Investor acknowledges that he, she or it understands the meaning and legal consequences of the representations and warranties of this Agreement and that the Company has relied upon such representations and warranties, and he, she or it hereby agrees to indemnify and hold harmless the Company and its officers, directors, affiliates, shareholders, controlling persons, agents and employees from and against any and all loss, damage or liability due to or arising out of a breach or the inaccuracy of any such representation, warranty or covenant. The Company acknowledges and agrees that any indemnification rights granted by Investor to the Company pursuant to this Agreement shall not be jointly and severally made with other investors in the offering and Investor shall not be held jointly liable for any liability arising under this Agreement. Any indemnification granted by Investor shall be limited to the amount of net proceeds received by Investor from the sale of Registrable Securities (as defined in the Registration Rights Agreement between Investor and the Company, dated as of April [___], 2005 (the Registration Rights Agreement")) in connection with any applicable Registration Statement (as defined in the Registration Rights Agreement). All representations, warranties and covenants contained in this Subscription Agreement, and the indemnification contained in this Section 4, shall survive the acceptance of this subscription and will continue in full force without limitation and effect.

5. <u>Further Agreement of Investor</u>. Investor recognizes and agrees that the Company shall have the right to accept or reject Investor's subscription, in whole or in part, for any reason whatsoever.

6. <u>Escrow Account</u>. The Company has entered into an Escrow Agreement with a Wachovia Bank, National Association ("Escrow Agent"). The terms of the Escrow Agreement, which the Company hereby agrees to make its best efforts to enforce, are as follows:

4

(a) All funds received by the Company from Investor ("Investor Funds" and together with all other funds received by the Company for the Units, "Investors Funds") pursuant to subscription agreements will be deposited with or wired to Escrow Agent within ten (10) days following the day upon which proceeds are received by the Company.

(b) From time to time upon the Company's request, and at the end of the third business day following the Termination Date (as defined below), Escrow Agent shall notify the Company of the amount of Investors Funds received hereunder. If the following requirements are met: (i) Investors Funds totaling $1,850,000 (the "Minimum Amount") or more are received by Escrow Agent at any time prior to the Termination Date and (ii) the Company has delivered to the Escrow Agent a written notice ("Notice") signed by an authorized officer of the Company stating that the Company has received and accepted subscription agreements for the Units totaling or exceeding the Minimum Amount (i and ii together are the "Requirements"), then Escrow Agent shall pay out the escrowed funds and all earnings thereon when and as directed by such written Notice.

(c) If the Requirements are not met prior to the Termination Date, Escrow Agent shall refund to each of the Investors at such person's address stated on the list of Investors provided by the Company, or at such other address as shall be furnished to Escrow Agent by the Company in writing, all Investor Funds received by the Escrow Agent for such Investor as stated on the list of Investors.

(d) If the Company does not accept an investor subscription, the Company will send a written notice to Escrow Agent to return such person's funds without interest. Such notice shall include the name and address of the payee and the amount to be paid to the payee.

(e) The "Termination Date" shall be the earlier of June 1, 2005 or the date Escrow Agent receives written notice from the Company that it is abandoning or closing the sale of the Units and that Escrow Agent is instructed to pay the Investor Funds to the Investors.

7. <u>Dilution</u>. Until two (2) years from the date the registration statement filed pursuant to the Registration Rights Agreement is declared effective, and except for the issuance of shares of Common Stock pursuant to any rights, warrants, convertible securities or options for its capital stock (i) as set forth in Section 9.1(a) of the Warrants issued to the investors by the Company, (ii) as in effect on the date of the PPM, or (iii) pursuant to the Offering (as defined in the PPM), if and when the Company issues or sells any Common Stock (including, rights, warrants, convertible securities or options for its capital stock) for a consideration per share less than the per share purchase price of such Common Stock in the Offering (with the entire amount of such purchase price being allocated entirely to the shares of Common Stock in such Unit and not to any warrants), then the Company shall issue, for each such occasion, additional shares of Common Stock to the Investor so that the average per share purchase price of the shares of

Common Stock issued to the Investor (of only the Common Stock still owned by the Investor) is equal to such other lower price per share. The delivery to the Investor of the additional shares of Common Stock shall be not later than thirty (30) days following the closing date of the transaction giving rise to the requirement to issue additional shares of Common Stock. The Investor shall be granted the same piggyback registration rights in relation to such additional shares of Common Stock that have been granted to the Investor in Section 2.5 of the Investor's Warrant issued by the Company.

8. _Headings_. Paragraph headings are not to be considered as part of this Agreement, are included solely for convenience, and are not intended to be full or accurate descriptions of the contents thereof.

9. _Construction_. Unless the context requires otherwise, words denoting the singular may be construed as denoting the plural, and words of one gender may be construed as denoting such other gender as is appropriate. The word including (and variations thereof) is used in an illustrative sense rather than a limiting sense.

10. _Succession and Assignment_. All of the terms and provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. Neither party may assign this Agreement or any of their rights, interests or obligations in this Agreement without the prior written consent of the other party.

11. _Notices_. Any notices to be sent to the Company, including, without limitation those required by Section 2(i) of this Agreement shall be sent to the following address:

Fellows Energy Ltd.
Attn: George S. Young
370 Interlocken Boulevard, Suite 400
Broomfield, Colorado 80021
Telephone: (303) 327-1525
Facsimile: (303) 327-1526

12. _Governing Law_. This Agreement will be governed by and construed in accordance with the laws of Colorado, without regard to the principles of conflicts of laws.

13. _Severability_. Wherever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law. However, if for any reason any one or more of the provisions of this Agreement are held to be invalid, illegal or unenforceable in any respect, such action will not affect any other provision of this Agreement. In such event, this Agreement will be construed as if such invalid, illegal or unenforceable provision had never been contained in it.

14. _Amendments and Waivers_. No amendment of any provision of this Agreement will be valid unless it is in writing and is signed by the parties. No waiver by any party of any default, misrepresentation or breach of warranty or covenant under this Agreement, whether intentional or not, will be deemed to extend to any prior or subsequent default, misrepresentation or breach of warranty or covenant under this Agreement or will affect in any way any rights

arising by virtue of any prior or subsequent such occurrence, and no waiver will be effective unless set forth in writing and signed by the party against whom such waiver is asserted.

      15.    <u>Entire Agreement</u>.  This Agreement including <u>Exhibit A</u> which is incorporated in and constitutes a part of this Agreement, contains the entire agreement of the parties and supersedes all prior oral or written agreements and understandings with respect to the subject matter.

**[Signature page follows]**

*FLWE*

Exhibit A

## SIGNATURE PAGE TO SUBSCRIPTION AGREEMENT

1. Date: __4/22__, 2005

2. Consideration: $ __400,000__ in cash,

Investor represents that:

(a) the information contained in this Subscription Agreement is complete and accurate and may be relied upon by the Company, and

(b) Investor will notify the Company immediately of any change in any of such information occurring prior to acceptance of Investor's subscription.

IN WITNESS WHEREOF, the undersigned has executed this Agreement and executed the Accredited Investor Certification attached hereto as Exhibit A on this __22__ day of __April__, 2005.

_____        _____
Signature of Investor                   Taxpayer Identification or
                                        Social Security Number

Pradafant 7
Furstentums 9490                        _____
Vaduz Liechtenstein                     _____
Name and Residence Address              Mailing Address if Different
(Post Office Address Not Acceptable)    from Residence Address
                                        (Post Office Address is Acceptable)

Type of Ownership (check one):

_____  Individual Ownership

_____  Community Property (each spouse must sign)

_____  Joint Tenants with Right of Survivorship (all sign)

_____  Tenants in Common (all sign)

Exhibit A

_____ Trust

____✓_____ Corporation

_____ S Corporation

_____ C Corporation

_____ Company

_____ Other (please specify type of entity _____)

## ACCEPTANCE

This Subscription Agreement between _____ and Fellows Energy Ltd. is hereby accepted as of _____, 2005.

**Fellows Energy Ltd.**
a Nevada corporation

By:_____
Name:_____
Title:_____

\\\DE - 21647/0005 - 227861 v6