UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                   :

ALPHA CAPITAL AKTIENGESELLSCHAFT,  :

               Plaintiff,      :

            - against -          :       Index No. 07 CV 3493 (CM)
                                  :

FELLOWS ENERGY, LTD.,          :       <u>AFFIDAVIT OF GEORGE YOUNG</u>
                                  :

              Defendant.      :

                                  :
------------------------------------------------------------x

STATE OF TEXAS         )
                      :  ss.:
COUNTY OF HUTCHINSON  )

      GEORGE YOUNG, being duly sworn, deposes and says:

      1.  I am the Chief Executive Officer and Principal Financial Officer of defendant Fellows Energy, Ltd. ("Fellows" or the "Company"). I have held these positions since January 5, 2004. I submit this affidavit in support of the parties' joint request that the Court approve the fairness of the terms of the settlement of this action pursuant to which Fellows will issue to plaintiff 4,000,000 shares of its common stock pursuant to Section 3(a)(10) of the Securities Act of 1933, as amended ("Section 3(a)(10)").

      2.  On or about May 18, 2005, plaintiff Alpha Capital Aktiengesellschaft ("Alpha Capital") purchased 727,727 shares of Fellows common stock at a price of $.55 per share pursuant to a Subscription Agreement dated May 18, 2005 (the "Subscription Agreement"). The Subscription Agreement included what is commonly referred to as a "ratchet down" provision. Pursuant to this provision, if Fellows were in the future to issue shares at a lower price per share than the price Alpha Capital was then paying, Fellows would issue additional shares to Alpha Capital so that the average price of the shares issued to Alpha Capital would be equal to the lower price per share at which Fellows was then issuing shares.

3.   On February 15, 2007, Fellows renegotiated certain terms of a 2005 financing agreement that it had entered into with various parties including Palisades Master Fund, L.P. (the "Palisades Renegotiation"). (The terms of the Palisades Renegotiation are described in more detail on Fellows SEC Form 8K, dated February 21, 2007. See Appendix to Affidavit of George Young, dated June 21, 2007 ("Appendix"), Exhibit A.)

4.   Thereafter, Alpha Capital informed Fellows that it believed that the Palisades Renegotiation triggered the ratchet down provision of the Subscription Agreement, so that Fellows became obligated to issue 6,174,763 shares of Fellows common stock to Alpha Capital. Fellows refused to tender that number of shares to Alpha Capital, because it felt that Alpha Capital was wrong either with respect to the triggering of the ratchet down provision, or because its financial analysis of the Palisades Renegotiation was incorrect, so that its calculation of the number of shares due Alpha Capital was incorrect. The parties then entered a period of negotiations to try to resolve their disagreement. When those negotiations stalled, Alpha Capital commenced this lawsuit.

5.   After this action was filed, the parties resumed settlement negotiations, ultimately reaching an agreement. From Fellows' point of view, given the uncertainties inherent in litigation, and the expense and management time and energy that is expended in defending a case, Fellows concluded that it made sense to settle this lawsuit on the basis of the issuance of 4,000,000 shares to Alpha Capital.

6.   In my view, the proposed settlement and stock issuance is fair to all concerned parties. With respect to Fellows' shareholders, I submit that the settlement and proposed stock issuance is fair inasmuch as Alpha Capital at a minimum has a colorable claim to the 6.1 million shares which it contends it is entitled to receive pursuant to the ratchet down provision. Fellows' most aggressive position, if the matter does not settle, is that Alpha Capital should not receive any more shares (because of what it has already been issued in earlier ratchet down issuances).

Alternatively, Fellows would have contended that Alpha is entitled to receive 3,050,552 shares based on the following calculation: (a) the initial investment made by Alpha was on June 8, 2005, when they purchased 728,206 shares at $0.55, for $400,000; (b) on May 22, 2006, Fellows issued 861,921 shares to Alpha based on a financing event pursuant to which Fellows issued stock valued at $0.25 per share; (c) on November 14, 2006, Fellows issued 1,083,607 shares to Alpha based on a financing event pursuant to which Fellows issued stock valued at $0.13 per share; and (d) since January 2007, the lowest price at which Fellows believes it issued stock was $0.06, and this would require the issuance to Alpha of an additional 3,050,552 shares. Issuance of shares to Alpha, based upon a $.06 price reflects a price that is almost 50% higher than the stock's current trading price. Thus, the share issuance will not be dilutive of the other Fellows' shareholders.

7.    Because Fellows believes that it may be held responsible to deliver 3,052,552 shares (without admitting any such liability) but is at risk of being held responsible to deliver over 6 million shares, a settlement at 4 million shares is fair and equitable to all parties.

8.    The only alternative the parties have to settling is to engage in litigation, and that would entail an expense that is significant for a company of the size and in the shape Fellows presently is in. I believe it is in the best interest of shareholders not to use our limited funds to fight Alpha Capital in this case, especially since Alpha Capital has suggested it might challenge any judgment it views as incorrect or insufficient. I furthermore believe that shareholders' interests will be better served if limited management resources are not tied up in this matter, especially given the risks of litigation. Moreover, to the extent relevant for purposes of evaluating fairness, the proposed issuance of stock to Alpha Capital would have no effect on creditors because the company would be issuing equity securities, which would not draw on the company's assets from which a creditor could satisfy its claim.

9.   During the past twelve months, the Company filed numerous documents with the SEC (see list at Appendix Exhibit B). For the court's convenience, we have downloaded these documents and they are contained on the CDR accompanying this affidavit. We have also printed out the following four documents:

(a) Schedule 14A Information, dated June 12, 2007 (Appendix Exhibit C);

(b) Form 10-QSB, dated May 16, 2007 (Appendix Exhibit D);

(c) Form 10-KSB, dated April 23, 2007 (Appendix Exhibit E); and

(d) Form 8-K, dated February 21, 2007 (Appendix Exhibit A).

10. To the best of my knowledge, there have not been any material changes or events affecting the Company over the past twelve months not otherwise reflected or disclosed on the Company's public filings.

11. Fellows presently has hundreds (if not thousands) of beneficial shareholders, who hold their shares through approximately 87 record holders. Attached as Appendix Exhibit F is a chart obtained from Yahoo Finance which reflects the closing price for Fellows over the preceding thirteen months. The Internet link to this information is: http:// finance.yahoo.com/q/hp?s=FLWE.OB&a=04&b=21&c=2006&d=05&e=21&f=2007&g=w .

12. In conclusion, on behalf of Fellows, I respectfully request that the Court find the stock issuance contemplated by the parties' settlement to be fair, and thereby permit the parties to consummate their settlement.

In witness whereof, I execute this Affidavit on this 21 day of June, 2007.

GEORGE YOUNG

Sworn to before me this
21 day of June, 2007

Notary Public

WENDY MOYLE
Notary Public
State of Colorado
My Commission Expires July 29, 2009